The next case this morning is 522-0216 People v. James. Arguing for the defendant appellant is Karen Weiberg. Arguing for the state is Trent Marshall. Each side will have 10 minutes for the argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning. Mr. Weiberg, it's your, on behalf of the defendant, would you like to begin when ready? Certainly, and thank you, your honors. And may it please the court, counsel. As your honors are aware, we've raised three issues in this case. I intend to start with and to really focus on the state's failure to prove Mr. James guilty beyond a reasonable doubt. However, time permitting, I do intend to touch on all three issues. And I'm, of course, happy to answer questions about anything that's in the briefs. Now, Mr. James was convicted of unlawful use or possession of a weapon by a felon in this case. Now, the state has conceded here on appeal that because he was found to have acted in self-defense when he used that weapon, that any conviction for unlawful possession must rely upon possession that took place prior to his using that gun in self-defense. Now, the only evidence in this case that goes to guilt or innocence is a video recording. The relevant portion of the recording is about a minute and 20 seconds. After that point, the car that has Mr. James and another person in it has left the parking lot, and the relevant portion is over. That video does not show Mr. James in physical possession of that firearm any time prior to using it to defend himself. And so the state's argument below and here on appeal really rested entirely on theory of constructive possession. In order to support that theory, the state is relying on what is essentially a single inference, which is that because Mr. James was able to duck into the car, get the gun, and come back out relatively quickly, he must have known where the gun was when he ducked in the car in the first place. And there are really two significant problems with that argument. The first is that it's simply not a reasonable inference under the law. It's speculative, and we'll talk about that. But second, and in some respects, more importantly, it really doesn't matter because knowledge alone is not sufficient to prove constructive possession. In order to prove constructive possession, you also have to show an intent and an ability to exercise control over the item in question. And there was simply no evidence to that presented. And the state hasn't really presented any argument about it here on appeal. As far as the videotape shows, which is the only evidence we have at trial, as far as the state's evidence shows, Mr. James was literally never in that car until the moment that he got in it when shots began coming at him and the other people there in the parking lot. Prior to that, he is one of several people standing in between two cars, both of which have their doors open. They're talking, they're walking back and forth. There's nothing to indicate any kind of possessory interest or possessory control over that car or anything that might be in that car. And in fact, the state didn't present any evidence as to who owned the car. How did the car get to the parking lot? How did Mr. James get to the parking lot? All we have is about, I think it's about 20 seconds of video prior to the shooting beginning. And in that, Mr. James walks in from off camera. He talks to some people in between two cars and then the shooting begins and he ducks inside. So there's nothing there to suggest that he had any kind of control or intent to control anything that was in that car. But even if knowledge were more of an issue here in this case than we believe it is, the state's inference really stretches the bounds, say the least, of what qualifies as a reasonable inference here. And a lot of that has to do with the evidence we don't have. For example, we don't know where in the car the gun was. The state contends, oh, well, he got in the car and he got the gun quickly, so he must have known where it was. Well, for all the evidence shows, the gun could have been sitting right there on the passenger seat in plain view. There's no reason that a person who jumped into a car could not see, hey, look, there's a gun on the seat and pick it up. Similarly, the gun could have been sitting on the passenger side floor. Again, we don't know, but Mr. James is getting in the car and ducking down to avoid being shot. There's no reason to think he couldn't have looked and seen something and grabbed it. Similarly, there are a group of people all around him as this is happening. There was one person leaning over basically on top of Mr. James while he was in the car, but we don't have any audience. We don't know what any of these people are saying. For all we know, somebody, as soon as the shots start ringing out, somebody's yelling, there's a gun in the car, grab it. Again, we just don't have any of that evidence. And that's what separates an inference that is reasonable enough to establish proof beyond a reasonable doubt from speculation. And in this case, what we end up with is speculation. I would like to briefly touch on our second issue, the claim of ineffective assistance of defense counsel. Defense counsel in this case, as I noted, the state did not present any evidence at trial as to who owned the car. However, the record does tell us who owned the car. The affidavit attached to the arrest warrant or the request for arrest warrant for Mr. James states that the police looked it up, they ran the plates and the car at issue belonged to Anthony Rimes. Anthony Rimes, we also know, was out there and was shot. Now, this evidence was highly relevant to basically rebut any inference that a trier effect might have made between the fact that Mr. James got in this car and that somehow being his car or a car over which he would have some kind of possessory authority or interest. Because as it turns out, it was not his car. It belonged to Mr. Rimes and Mr. Rimes got in the car with him. And so when Mr. James drives away in this car, it is not because Mr. James or at least there's no reason to presume because Mr. James has some kind of possessory interest or control over this car because the car's owner got in the car with him. And common sense simply tells us that when you're relying on circumstantial evidence to show a prior possession that we don't really see any evidence of on screen. Common sense says any one of us is more likely to have both the intent and the ability to exercise control over an item that is in a car that belongs to us than in someone else's car, although possession and ownership are distinct concepts. As a matter of inference, it's simply more likely if you see an item in a car and I say that's my car, you're probably going to assume that then that's my item. That's just a reasonable inference to make. But here, defense counsel had the ability to rebut that inference and did not do it. And notably, the trial court asked about this. The judge was clearly thinking about it. The judge asked, hey, do we know who owned the car? And the state said, no. Well, it's in the affidavit. We know who owned the car. It was Mr. Rimes who owned the car. Third and finally, I'd like to touch briefly on our sentencing argument. The state argued extensively below and the circuit court found that James' act of firing the gun in self-defense was aggravating for sentencing purposes. And there are really, we think, two significant problems with that argument. The first being the state has pointed to no law and I can find no law that says the justified act of self-defense is somehow an aggravating act. This was not a criminal conduct. It was not wrongful conduct. Mr. James was fired upon and he fired back in self-defense. That's simply not aggravating. And what's happening here is really a misallocation of responsibility for what happened that night. The state argued and the judge seemed to suggest that Mr. James was somehow responsible for putting all of these people in danger that night. What happened was that two unidentified and unknown attackers came out of the shadows and opened fire on a parking lot full of people. They put a bunch of people in danger that night. Mr. James responded in defense of himself and others, and ultimately those attackers fled. So you can't put responsibility for that on him. Second, and we think also significantly, as the state has conceded, the act of firing that gun was not any part of the conduct that Mr. James was convicted of. At that point, his act of possessing the gun was justified. He was convicted of possessing this gun at some point prior to using it to defend himself. And this isn't a case where we can say just the fact that a defendant possessed a weapon may have somehow caused a violent incident, right? You might have a situation where you have a group of people, they're arguing, somebody sees that one person has a gun, so somebody else pulls their gun. This isn't that situation. The gun was in the car. Mr. James was not particularly close to it. Neither Mr. James nor anybody he was with engaged in any kind of aggressive behavior. They were just standing around talking in a parking lot, and these two other people opened fire. So there's simply no way that we can find that Mr. James' act of having the gun there, even assuming that he is responsible for that. There's no way we can assume that played any role in placing anybody in danger here. That was done by the two unidentified attackers. If there are no questions, then I'll wrap up my remarks there. And we would ask that this court reverse his conviction and either reverse it outright or remand for a new trial with the effective assistance of counsel. Or as a third alternative, vacate the sentence and either impose a lesser sentence or remand to the circuit court. Thank you. Justice Welch, any questions? Questions. Justice Moore? No questions. All right. Thank you, Mr. Weiberg. You will have a chance at rebuttal. Mr. Marshall for the state. Thank you, Your Honor. Your Honors, may it please the court, counsel. Seeing as a trier of fact, the trial court concluded that even if the pistol in the car had belonged to Mr. Rimes, the video footage from the gas station showed the defendant certainly, those are the court's words, certainly knew where it was. And it's the state's position now that the footage clearly supports that finding and that the defendant's conviction on count three should accordingly be affirmed. On appeal, the defendant offers some explanations as to why he might have been able to obtain the weapon as quickly as he did. But even assuming that those claims could be deemed plausible under the circumstances, the state was not required to disprove them. The defendant could have testified that the car was not his. He elected not to testify. I think the trial court considered the possibility that it was not his car or wasn't his car. But again, trial court said even assuming that the gun was Mr. Rimes, defendant knew where he was, grabbed it instantaneously. With respect to the sentencing issue, state submits that the trial court's comments regarding the seriousness of the conduct and the fact that he put other people in danger were general comments regarding the circumstances of the offense. I think it was fair to consider the reckless manner in which the defendant discharged the gun, even though he was found to have acted in self-defense. Why are we to consider that? Why can we consider the reckless conduct if he was found to have acted in self-defense? Well, Your Honor, I would say two things, two points on that. Number one, he admitted he'd been drinking that night. And number two, he admitted that not all the shots that he fired had been in the direction of the assailants. The state put it up, I think, at the sentencing hearing. And there were volley shots here, here, and there. And he admitted, yeah, I thought they were here. And then I thought it was in that car. So there was some indiscriminate firing going on there. And self-defense wouldn't apply to innocent bystanders. And even if you're acting in self-defense, I would think that if you were reckless, you could still be charged with involuntary manslaughter. But those considerations aside, I think the trial court's primary concern was the fact that the President's incident occurred less than a month after the defendant's release from prison in 19 CF 707, which was another gunplay incident. I guess the defendant and some friends shot up a house. So I think the trial court's point that he was trying to make was you have a bad habit of finding yourself in these situations involving possession of handgun and reckless discharge. I don't think the trial court was necessarily dinging him because he acted in self-defense. I think it was the manner in which he did it and was the overall circumstances of the conduct. And if there are any questions, I would ask that you affirm conviction on count three in the sentence. Trial court admitted that it was harsh. I would note that. The range was elevated to 7 to 14, I think, and he gave him 11. But he specifically said, if for no other reason, protection of the public. That's all I've got, Your Honor. Justice Welsh? No questions. Justice Moore? No questions. All right. Thank you, Mr. Marshall. I'll be out of the state. Mr. Weiber for the defendant. Thank you, Your Honor. Yeah, just a couple of points there. First, I would note, we still have not heard an argument about intent or capability to control that item. All we have heard is that Mr. James must have known where it was. Knowledge of where an item is simply does not amount to constructive possession under the law. And there is no evidence in this case to suggest either intent or capability to exercise control. As to the question as to whether Mr. James could have testified and stated that he didn't own the car, he certainly could have. But Mr. James is not obligated to prove anything at trial. He does not bear that burden. It was up to the state to prove that he had constructive possession of this weapon, and they did not do so. This is not an issue where we're talking about, I believe in their briefs, the state used the phrase, the need to disprove every hypothesis consistent with innocence. No, they're not required to do that. What they are required to do, however, is establish proof beyond a reasonable doubt. And where all you have are these extremely tenuous inferences based on a short segment of video that never shows Mr. James do anything with relation to that gun until the moment that he dives in the car after getting shot at and picks it up. They simply haven't proved constructive possession beyond a reasonable doubt. Have they made it plausible? Sure, it's plausible that he knew where the gun was. Maybe it's plausible that he had some possession of it. Is it likely? Honestly, under this evidence, I would say no. It's at best a 50-50 toss-up as to whether it was his gun or someone else's, or he just saw it. But none of that is sufficient anyway. What they're required to do is present proof beyond a reasonable doubt. And the law says that there's a line between speculation and inference. And here, the state's argument falls well on the wrong side of that one. As to the sentencing argument, I would first note Mr. James was not previously convicted of discharging a firearm. He was previously convicted of possessing a firearm. Second, as to whether he defended himself in a reckless fashion, I'm not aware of anywhere in the law that we require someone to act in perfect self-defense. Mr. James was fired upon in a parking lot from people who were in the shadows. You can't directly see where they are. He did his best to fire at where he thought the individuals attacking him were. And then when he realized the shots were coming from another direction, he turned and he fired in that direction. That's not aggravating. That's a person in a life or death situation acting under very difficult circumstances and doing their best to protect themselves and the other people around them. And I'm not aware of anything that says that is aggravating. I'm similarly aware that he was not charged with some kind of, I guess, involuntary manslaughter. Nobody was hit, so I don't know how that would ever occur. But he was not charged with some kind of reckless conduct in using this gun. He was charged with aggravated discharge of a firearm, and he was found not just not guilty, but not guilty based on self-defense because he was justified in the act. And the video entirely corroborates that. There is no question under that video that Mr. James is just standing there when all of a sudden shots ring out. A window is shot out right next to his head as he's trying to duck into the car. He gets out and fires towards where he thought the attackers were. That's simply not aggravating. That's a person in bad circumstances doing the best they could to try to defend themselves and other people. As to whether the judge was relying on his prior background, as we said in our briefs, that's not an issue in this case. The judge certainly could consider that. But the judge absolutely very clearly considered the fact that he thought James somehow put these people in danger, and he did it explicitly, considered whether James put these people in danger that night by possessing this gun. And that is simply not what the evidence shows. The evidence shows that those people were placed in danger when two completely different, unknown people opened fire on that parking lot, and Mr. James acted in self-defense. If there are no questions, then we'll go ahead and, again, we would ask that this court reverse his conviction outright. Alternatively, we would ask that this court reverse that conviction and remand for a new trial with the effective assistance of counsel. And as a third and final alternative, we would ask that this court vacate his sentence and either impose under its own authority a lesser sentence or remand to the circuit court for a new sentencing hearing without the consideration of an improper aggravating fact. And I thank you very much. Justice Welch, any questions? No questions. Justice Moore? No questions. All right. Thank you both for your arguments here today. This matter will be taken under advisement. We'll issue an order in due course. And that concludes the oral arguments for today. This court will be in recess until tomorrow morning at 9 o'clock.